# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| JERRY D. HICKS | CIVIL ACTION NO. 06-0071 |
| VS. | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE METHVIN |

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, **IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED.**

*Background*

Born on April 23, 1960, Jerry Hicks ("Hicks") is a 46-year-old claimant who completed the ninth grade in special education classes and failed the second grade. (Tr. 210). Hicks has worked in the past as a crew boat engineer and laborer. (Tr. 21).

Hicks filed an application for disability insurance benefits and supplemental security income on April 19, 2004, alleging disability as of April 16, 2003 due to status-post fixation of the left tibia and fibula and a learning disorder. Hicks contends that he cannot read or write, and is, therefore, functionally illiterate. Hicks's application was denied initially and on reconsideration, and an administrative hearing was held on August 18, 2005. In an opinion dated September 21, 2005, the ALJ found that Hicks has a "limited education" and retains the residual functional capacity to perform sedentary work. (Tr. 28-29). The Appeals Council denied review, (Tr. 4-6), making the ALJ's decision the final decision of the Commissioner from which Hicks now appeals.

Hicks remained insured for disability insurance benefits through December 2004, and, therefore, must demonstrate that he was disabled prior to that time in order to be eligible for benefits.. (Tr. 79).

*Assignment of Errors*

Hicks raises two errors on appeal: (1) the ALJ erred in finding that he has a "limited education," and as a result, failed to apply Rule 201.17 of the Medical-Vocational Guidelines, which would have directed a finding of "disabled;" and (2) the ALJ erred in relying upon the testimony of the vocational expert.

*Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

*Analysis*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the instant case, the ALJ determined at Step 5 that Hicks suffers from a combination of severe impairments, including status-post open reduction internal fixation of the tibia and fibula, learning disabilities, and mild anxiety, but that he nevertheless retains the residual functional capacity to perform a significant range of sedentary work, including the jobs of production worker, painting worker, and assembler. (Tr. 27-28). In so concluding, the ALJ found that Hicks has a "limited education."

After careful consideration of the record, the undersigned concludes that the ALJ's decision is not supported by substantial evidence.

1. **<u>Illiteracy</u>**

There is no dispute concerning Hicks's medical history. Hicks fractured the distal shaft of his left tibia and left fibula in September 2003. He underwent surgery on September 24, 2003 (Tr. 116-17), and has continued to complain of significant pain in his left leg, as well as swelling in this left ankle. X-rays taken in January 2004 showed prominent callus formation around both fracture sites, as well as moderate soft tissue swelling around the ankle joint. Diagnosis was "delayed union of the left fibula." (Tr. 122, 125-26).

Hicks contends that the Commissioner erred in concluding that he has a "limited education" instead of being "illiterate." This is a pivotal question in this case, because one classification directs a finding of "disabled" and the other of "not-disabled" under the Medical-Vocational Guidelines.

At the administrative hearing, Hicks testified that he has a ninth-grade education and attended special education classes. (Tr. 210-11). Hicks testified that his special education classes were self-contained classes for reading, spelling, and math. (Tr. 210). The record further shows that Hicks failed the second grade. Hicks testified that he is unable to read a newspaper or magazine, but can read and write some small words containing three to four letters. (Tr. 199-200). Hicks testified that he can write his name, (Tr. 199), he failed the drivers' test three times before being allowed to take it orally, which he then passed, (Tr. 200), and he can add and subtract only "real small numbers." (Tr. 211).

Hicks testified that his past work history involved primarily unskilled labor. Hicks stated that as a crew boat worker, he changed the oil and filters in boat engines, tied up boats, swept, mopped, washed dishes, and cleaned. (Tr. 211). Hicks testified that although he was called an

"engineer" on the boat, he is not a licensed engineer. (Tr. 209). As a general laborer, Hicks helped build a prison in Tennessee by pouring concrete and putting up a fence. (Id.).

The record shows that in the "Field Office" report form completed on April 29, 2004, the interviewer noted that Hicks constantly switched his answers to her questions and asked the same questions of her over and over again. The interviewer stated that she could not "ascertain whether or not he was lying or just confused. I tried to [consciously] ask the questions in a slow and simple manner, but this did not help." (Tr. 83). Furthermore, Hicks was unable to complete many social security forms, including the form asking for his list of medications, which his attorney filled out for him. Furthermore, the record shows that Hicks's "Work History Form" is not completed and contains a note that Hicks "[could not] complete any of it without help." (Tr. 93). Finally, Hicks's "Activities of Daily Living" form was completed by Dawn Scott, a friend. (Tr. 92).

In July 2004, Hicks was examined by Dr. Sandra B. Durdin, a clinical psychologist. Dr. Durdin reported that Hicks has low average vocabulary, memory, understanding of the rules of social convention, and nonverbal skills. Dr. Durdin also administered the WAIS III test. Hicks scored a 76 on the verbal test, a 79 on the performance test, and received a full scale score of 76. (Tr. 158). Dr. Durdin diagnosed Hicks with a learning disorder and probable functional illiteracy. (Tr. 156-58).

On August 27, 2004, a non-examining state physician noted in a Psychiatric Review Technique that Hicks does "not show significant restrictions due to mental health reasons, other than that he is illiterate." (Tr. 180).

The Regulations define illiteracy as "the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. §404.1564(b)(1) (emphasis added). *See also* Albritton v. Sullivan, 889 F.2d 640, 642 (5th Cir. 1989). The Regulations define "limited education" as ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education." 20 C.F.R. § 404.1564(b)(3). Furthermore, the Regulations state that ". . . the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities." 20 C.F.R. § 404.1564(b); see also Albritton v. Sullivan, 889 F.2d 640 (5th Cir. 1989) (ALJ's finding that Albritton's four years of formal schooling meant he had a "marginal education" was erroneous, noting that "Albritton's formal schooling was no longer meaningful and did not represent his educational abilities in the face of uncontradicted evidence that he was functionally illiterate."); accord Dollar v. Bowen, 821 F.2d 530 (10th Cir.1987) (despite eighth-grade schooling, claimant's education cannot be classified as "limited or less" when uncontradicted evidence is that claimant could not read or write).

The Sixth Circuit faced very similar facts in a case entitled Skinner v. Secretary of Health & Human Services, 902 F.2d 447, 450 (6th Cir. 1990). In Skinner, the claimant was fifty years old at the time of his administrative hearing. Skinner testified that he attended school full-time

w

until age 12, when he was required to commence seasonal field work. 902 F.2d at 448. Thereafter, he continued his education on a part-time basis until age 17. Id. Mr. Skinner testified that he could not read a newspaper; could sign his own name but required assistance when filling out the social security forms; had the written portion of his driver's license examination administered to him orally; had never held a job requiring reading or writing skills; and had limited mathematical skills, including difficulty making change. Id. Testing showed that Mr. Skinner read below the third grade level. Id. Despite the testimony of the vocational expert at the administrative hearing that a person who reads and writes on the third grade level is functionally illiterate, the ALJ determined that Mr. Skinner had a marginal education and was capable of performing a limited range of light work. Id. The Sixth Circuit disagreed, noting:

> The ALJ erroneously concluded that Skinner possesses a marginal education and, therefore, is not disabled. The record does not support the ALJ's characterization of Skinner's educational preparation. In fact, the record provides overwhelming evidence that Mr. Skinner is illiterate. Had the ALJ properly found Mr. Skinner illiterate, the Grids would have directed the ALJ to award Mr. Skinner benefits. 20 C.F.R. Part 404, Subpart P, App. 2, Table 2, Rule 202.09. . . .The record is replete with evidence that Mr. Skinner is illiterate. Mr. Skinner's WRAT results indicate that he reads below the third grade level, and his math computation skills place him in the first percentile of his age population. Based upon Mr. Skinner's WRAT results and a vocational analysis interview, Mr. Goldstein concluded that Mr. Skinner is functionally illiterate. Moreover, Dr. Carter agreed that a worker who reads and writes at or below the third grade level is functionally illiterate.

Id. at 450.

In Green v. Barnhart, 29 Fed.Appx. 73, 75, 2002 WL 181354,*1 (3rd Cir. 2002), Green testified first that he had an eighth-grade education, then later changed that to a sixth-grade education. The ALJ concluded that this was a "marginal education." On appeal, the Third Circuit held that there was evidence to contradict a presumption that Green's sixth-grade education meant that he had a marginal education, including Green's testimony that he cannot

read.  In response to the Commissioner's argument that Green's testimony was not totally credible and could only be considered as a "subjective statement," the Third Circuit responded as follows:

> We remind the Commissioner that proceedings for Social Security benefits are non-adversarial, see *Sullivan v. Hudson,* 490 U.S. 877, 891, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989), and if the Commissioner had doubts about Green's testimony because it was "subjective," he could have easily resolved those doubts by administering an "objective" test, such as asking Green to read a brief passage and to write a short note.

Green, 2002 WL 181354,*1.

Like the claimants in Skinner and Green, Hicks testified that he can read only short words, can only write his name, and can only add and subtract small numbers.  Furthermore, the record shows that Hicks was unable to complete any of the SSA forms in connection with his disability application, and they were prepared by friends or his attorney.  The record further shows that several professionals, including the SSA interviewer who prepared some of his paperwork, Dr. Durdin, and the non-examining state physician, opined that Hicks is "functionally illiterate."

In concluding that Hicks has a "limited education," the ALJ apparently relied heavily on the fact that Hicks completed the ninth grade.  Based on his review of the record, the ALJ found that Hicks has the "cognitive ability to perform basic, simple tasks and get along with peers in an ordinary routine setting."  (Tr. 25).  The ALJ also questioned Hicks's credibility.  For instance, the ALJ stated that Hicks testified that he never used street drugs other than marijuana but that he told Dr. Durdin differently.  Review of Dr. Durdin's notes, however, show that Hicks's statements to Dr. Durdin were consistent with his testimony.  According to Dr. Durdin, Hicks told her that he used marijuana in the past and had been charged for possession of it, but that he

did not use marijuana anymore. (Tr. 157). Therefore, Hicks's statements to Dr. Durdin are not inconsistent with his hearing testimony.

The fact that Hicks completed the ninth grade does not compel a finding that he has a "limited education" The regulations clearly state that the "numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower." Furthermore, in the instant case, there is substantial contradicting evidence showing that Hicks is, in fact, functionally illiterate, including his testimony that he cannot read words with more than a few letters, cannot add and subtract large numbers, was unable to pass a written driver's test, and was unable to complete any of his social security forms without assistance. Furthermore, the record does not show that the ALJ asked Hicks to demonstrate his level of literacy at the administrative hearing, either by administering a reading or writing test. Considering the foregoing, the undersigned concludes that the ALJ's determination that Hicks has a "limited education" is not supported by the evidence in the record. To the contrary, the record is replete with evidence that Hicks is functionally illiterate.

## 2. <u>Borderline Age Situations</u>

Hicks argues that the ALJ should have applied the "borderline age situation" rules in this case to direct a finding that he is disabled, because on December 31, 2004, the date he was last insured for disability benefits, Hicks was just four months shy of his 45th birthday. Pursuant to the regulations, a "younger individual" in the social security context is defined as an individual age 18 through 49. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Section 201.00 (h)(1). The regulations further state: "For individuals who are age 45-49, age is a less advantageous factor for making an adjustment to other work than for those who are age 18- 44. Accordingly, a finding of "disabled"

is warranted for individuals age 45-49 who: (i) are restricted to sedentary work; (ii) are unskilled or have no transferable skills; (iii) have no past relevant work or can no longer perform past relevant work; and (iv) are unable to communicate in English, or are able to speak and understand English but are unable to read or write in English. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Section 201.00 (h)(1)(i)-(iv). These rules are reflected in Grid Rule 201.17, which directs a finding of "disabled" when the foregoing categories are satisfied.

Hicks contends that, had the ALJ concluded that he is illiterate, such a finding would have directed a conclusion that he is disabled. Specifically, Hicks argues that a finding of illiteracy in combination with a finding that his past work is unskilled with no transferable skills, and application of the "borderline age situation" rules prior to Hicks's date last insured, would have resulted in a finding of "disabled" pursuant to Rule 201.17 of the Medical-Vocational Guidelines (the "Grids").

When determining a claimant's age under the Medical-Vocational guidelines for purposes of disability insurance benefits, the claimant's age on the date last insured generally governs. Van Der Maas v. Commissioner of Social Sec., 2006 WL 2986514, *7 (6th Cir. 2006), citing Curtis v. Sec'y of Health and Human Services, No. 88-1773, 1989 WL 83869, at *3 (6th Cir. 1989) (unpublished). The age categories are not to be mechanically applied, however, when the claimant is in a borderline situation. Van Der Maas, 2006 WL 2986514 at *7, citing Crady v. Sec'y of Health and Human Servs., 835 F.2d 617, 622 (6th Cir.1987) (holding that the ALJ could make his own determination of Crady's age in a borderline situation and was not bound by a medical report stating that Crady appeared older than his chronological age); 20 C.F.R. §404.1563(b). According to the regulations, a "borderline age situation" is present where the

claimant is within a few days to a few months of reaching an older age category and where application of the older age category would result in a finding of disability. 20 C.F.R. §404.1563(b). If both of these factors are present, the ALJ is to use a "sliding scale" approach, taking into consideration the claimant's proffer of "additional vocational adversities" that might warrant moving her to an older age category. *Application of the Medical-Vocational Guidelines in Borderline Age Situations,* Social Security Admin., Ofc. of Hearings and Appeals, *Hearings, Appeals and Litigation Law Manual* (HALLEX) II-5-3-2 (2006). "The fact that age categories are not to be applied mechanically, however, obviously does not mean that a claimant must be moved mechanically to the next age category whenever [her] chronological age is close to that category." Crady, 835 F.2d at 622; see also 20 C.F.R. §404.1563(b). According to Hallex-II-5-3-2, the Commissioner is to "consider applying these guidelines *whenever the age category changes within a few months after the alleged onset date, the date last insured (or the prescribed period), or the date of the ALJ's decision.*"

The undersigned concludes that, given the fact that Hicks was just four months shy of his 45th birthday on his date last insured for disability benefits, the fact that he is illiterate, and the fact that this past work was unskilled labor, the ALJ erred in failing to apply the "borderline age situation" rules and in failing to conclude that Hicks is not disabled under Rule 201.17 of the Grids.

## II. Reliance Upon Testimony of Vocational Expert

Hicks also contends that the ALJ erred in relying upon the testimony of the vocational expert called to testify at his administrative hearing, because the VE did not indicate specific jobs

that a hypothetical claimant could do. Because the undersigned concludes that the Grids direct a finding of disability, it is unnecessary for the court to address this issue.[1]

*Conclusion*

Considering the foregoing, it is recommend that the Commissioner's decision be **REVERSED**, and that Hicks be awarded benefits consistent with an onset date of April 16, 2003.

Any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See, Richard v. Sullivan, 955 F.2d 354 (5th Cir. 1992) and Shalala v. Schaefer, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal**

---

[1] Furthermore, the undersigned concludes that this contention is without merit. Hicks argues that the VE failed to cite to specific jobs in the Dictionary of Occupational Titles ("DOT") that a hypothetical claimant could perform, and that the ALJ therefore erred in relying upon the VE's testimony. However, the record shows that the VE did cite to broad categories of work recognized in the DOT that a hypothetical claimant could perform, as well as the number of those jobs existing in the national economy, including the jobs of production worker, painting worker, and assembler. (Tr. 218-19). Therefore, the undersigned concludes that this claim is without merit. Nevertheless, for the reasons set forth hereinabove, the undersigned concludes that Hicks is entitled to benefits.

**conclusions accepted by the District Court, except upon grounds of plain error. See**

**<u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).**

    Signed at Lafayette, Louisiana, on February 1, 2007.

_____
Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)